# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **CHERYL MORTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. CIV-17-241-RAW-SPS |
| ) | |
| **COMMISSIONER of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant Cheryl Morton requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born June 28, 1968, and was forty-seven years old at the time of the administrative hearing (Tr. 48, 185). She completed the twelfth grade, and has worked as an administrative assistant and quality assurance coordinator (Tr. 41, 213). The claimant alleges that she has been unable to work since June 1, 2013, due to back problems, depression, anxiety, insomnia, migraines, hypertension, and heart problems (Tr. 212).

### Procedural History

On December 6, 2013 the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Roy E. LaRoche, Jr., conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 20, 2015 (Tr. 31-43). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the additional limitations that she could occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds; occasionally stoop, kneel, crouch, and crawl; and that she must avoid no more than occasional exposure to extreme cold, vibration, and workplace hazards such as unprotected

heights and hazardous machinery. Additionally, he determined that she could perform simple and routine tasks involving no complex, independent planning or goal setting, and involving no more than occasional, superficial interaction with the public (Tr. 36). The ALJ then concluded that although the claimant could not return to her past work, she was nevertheless not disabled because there was work she could perform, *i. e.*, final assembler, laminator I, and patcher (Tr. 41-42).

## Review

The claimant alleges that the ALJ erred by: (i) finding she could perform sedentary work; (ii) improperly evaluating the opinion of her treating physician, as well as the opinions of her pain management doctor and her therapist; and (iii) failing to properly account for her use of a cane in the formulating the RFC. The undersigned Magistrate Judge agrees with the claimant's second contention, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of cervical, lumbar, and thoracic spine disorder; obesity; affective disorder; and anxiety disorder (Tr. 33). Relevant medical records reflect that the claimant has a long history of over five surgeries on her back and neck (Tr. 37, 63). A January 2014 myelogram revealed a waist like deformity at the L4-L5 level, along with significant facet arthropathy and mild spinal stenosis (Tr. 365, 374). A CT of the cervical spine that same month revealed spinal stenosis at C4-C5 with osteophyte and disc bulge/protrusion, along with a question of some left neural foraminal narrowing; post-surgical changes with compression plate and screws from C5 through C7; and a few small osteophytes from C5 through C7 but no significant stenosis

(Tr. 368-369). A CT of the thoracic spine revealed multilevel thoracic spondylosis with no acute findings (Tr. 474).

On March 5, 2014, the claimant underwent additional surgery on her cervical spine by Dr. Brian Snell (Tr. 382). She was given restrictions of no lifting, bending, stooping, twisting, driving, or strenuous exercise until her follow-up appointment with Dr. Snell (Tr. 387). On March 27, 2014, Dr. Snell's treatment notes stated that he was "delighted with her progress *with respect to her neck surgery*," but noting a continued treatment plan to address pain with regard to back, buttock, and thigh pain and determining the extent such pain was caused by her L4-5 facet joints adjacent to her fusion (Tr. 451) (emphasis added).

The following month, Dr. Justin Ross Porter saw the claimant for complaints of low back pain and bilateral lower extremity pain toward the hip and buttocks (Tr. 460). His impression was lumbosacral spondylosis, lumbosacral facet arthropathy, and chronic pain syndrome (Tr. 461). He recommended lumbar facet joint blocks at L4-5, which were performed that day (Tr. 461-463). A review of the cervical spine after that revealed a stable fusion at C4-5 (Tr. 464).

The record also contains treatment notes from Dr. Rodrigue, which indicate he treated her for continued back pain and had done so since 2006 (Tr. 502). On August 13, 2010, he stated that her medical condition had worsened so much that he did not see how she was working at that time (she did not stop working until June 2013) (Tr. 340). He performed a number of epidural steroid injections on the lumbar spine from 2011 through 2013 (Tr., *e. g.*, 310-334, 342-353). On January 29, 2014, Dr. Rodrigue wrote a letter stating that he supported her contention that she was unable to work, citing her significant

lumbar spine disease, failed lumbar spine surgery, chronic opiate usage, and multiple injections that have attempted to control her pain. He noted that her quality of life was poor and that she could not "sit or stand for long periods of time" (Tr. 361). He stated that although he did not perform functional capacity evaluations and could not "quantify her dysfunction," he had "no doubt that she is disabled" (Tr. 361). On May 15, 2015, Dr. Rodrigue repeated this information in another letter (Tr. 499). He wrote an even more detailed letter on August 11, 2015, in which he stated that he felt she was 100% disabled due to her history of multiple spine surgeries and chronic intractable pain (Tr. 529). He continued, indicating that she had significantly diminished motor strength in her left lower and left upper extremity, as well as decreased sensation, and that her upper extremity strength was diminished in the C5 and C6 myotomes (Tr. 529). He further stated that she made good effort on exams, with no embellishment or amplification of symptoms (Tr. 529). He also noted that prolonged sitting and standing aggravated her symptoms "considerably," which was consistent with her degenerative disc disease of the lumbar spine, and that movement of the upper extremities and weightbearing were very strenuous for her (Tr. 529). Dr. Rodrigue also stated that she "does get up and move around, but only to stave-off further degeneration of her musculature and skeletal elements [and] she is not doing much of that anymore either" (Tr. 529). He then stated that his treatment notes document his statements (Tr. 529).

Additionally, on January 30, 2014, Dr. Rodrigue completed a physical RFC questionnaire, in which he indicated that the claimant's diagnoses were postlaminectomy syndrome, lumbar region; lumbosacral spondylosis; spasm of muscle; and thoracic

-6-

spondylosis, and he further indicated that her prognosis was chronic (Tr. 500). He estimated that the claimant could walk maybe half a block, sit fifteen minutes at a time, stand/walk ten minutes at a time, and sit and stand/walk one hour each total in an eight-hour workday; and that she would need to shift positions, as well as take unscheduled breaks every thirty minutes that would each last at least thirty minutes (Tr. 500). He further indicated that she could lift less than ten pounds; she had limitations in repetitive reaching, handling, or grasping; that she would likely to be absent from work one to two days per month; and that she was not physically capable of working a full time job (Tr. 501).

The claimant also received mental health treatment through a clinic in Ardmore, Oklahoma, where she was diagnosed with persistent complicated bereavement disorder, insomnia, and anxiety not otherwise specified (Tr. 412). Treatment notes from therapist Pamela Frantz in March 2014 (the same month as her surgery) noted that she was better emotionally but that sleep continued to be problematic (Tr. 401).

On January 13, 2014, the claimant's therapist Pamela Frantz completed a mental capacity assessment, in which she indicated that the claimant had marked limitations in eight areas, including the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, and complete a normal workweek without interruptions from psychologically based symptoms. Additionally, Ms. Frantz noted that the claimant had thirteen moderate limitations, including the ability to understand and remember very short and simple instructions, sustain an ordinary routine without special supervision, and perform at a consistent pace with a standard number and length of rest periods (Tr. 356-357). In explanation for these limitations, Mr. Frantz noted

that the claimant's diagnoses included anxiety not otherwise specified, insomnia, and persistent complicated bereavement disorder, and stated that the claimant's chronic anxiety disrupts her memory and process functions, that sleep deprivations and anxiety over time causes her to be unable to make simple decisions and perform, that she would do relatively better with social interactions but be hypersensitive to criticism and instructions, and that she would have problems adapting to change in light of her anxiety (Tr. 356-358).

     State reviewing physicians determined that the claimant could perform light work, but that she could only occasionally stoop, due to low back pain and obesity (Tr. 96-97, 113).  As to her mental impairments, one state reviewing physician determined that she had moderate limitations in the three usual areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 99-100).  She then concluded that the claimant could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation (Tr. 99-100).  On review, another reviewing physician found that the claimant was markedly limited in those same three areas, and that she could perform simple, routine tasks; relate to others for work purposes, but should avoid working with the general public; and that she could adapt to a work situation (Tr. 115-117).

     In his written opinion, the ALJ summarized the claimant's hearing testimony as well as much of the evidence contained in the medical record (Tr. 17-22).  He summarized much of the objective test results related to the claimant's lumbar, thoracic, and cervical spines (Tr. 38).  Additionally, he noted Dr. Rodrigue's treatment records from 2011 through 2013, in which the claimant continued to complain of pain and she underwent a number of

epidural steroid injections and therapeutic nerve blocks and injections (Tr. 37-38). As to Dr. Snell, the ALJ summarized his treatment notes and the cervical procedure performed on March 5, 2014, as well as the fact that Dr. Snell was delighted with her progress but that he noted her continued pain. The ALJ acknowledged that the claimant continued to complain of pain, but noted findings of 5/5 motor strength in the upper and lower extremities, negative straight leg raise test, and an x-ray revealing a stable fusion at C4-C5 (Tr. 38). He then turned to the mental health treatment records, noting Ms. Frantz's statements and assessments, and pointing out that "[s]ome improvements were noted" (Tr. 39). He then gave great weight to the opinions of the state reviewing physicians with regard to her mental impairments. The ALJ also gave some weight to the opinions of the physicians with regard to her physical impairments, stating that additional evidence demonstrated she was more limited than to light work, and that sedentary work more reflected her limitations (Tr. 40). The ALJ then gave great weight to Dr. Snell's March 27 statement that he was delighted with the claimant's progress following her cervical procedure, noting that her post-surgical limitations were not continued (Tr. 40). He gave little weight to Dr. Rodrigue's letters stating that he believed the claimant was disabled because: (i) it was an issue reserved to the Commissioner and could not be given special significance, (ii) it was not clear he was familiar with the Social Security Administration's definition of "disabled," (iii) the functional limitations appeared to be subjective rather than objective because Dr. Rodrigue stated that he did not perform true functional capacity evaluations, and (iv) no other source provided corresponding limitations (Tr. 40). He further gave little weight to Ms. Frantz's mental RFC assessment, finding they were not

consistent with the opinions of the state *reviewing* physicians, the record as a whole, and her own treatment notes which had indicated a decrease in the severity of her symptoms (Tr. 41).

The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). *See also Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). This is of particular concern where, as here, there is a good indication that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments but focused particularly on Dr. Snell's delight at her immediate post-surgical progress with regard to *one* of her many impairments. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation."). In particular, the ALJ assigned great weight to Dr. Snell's delight at her post-surgical progress in March 2014 with regard to her neck, but ignored the fact that Dr. Snell was still concerned with her continuing lumbar pain. This resulted in a referral for further treatment the following month (even in light of the stable fusion that was noted in the same time period), and other treatment records reflect continued complaints of pain.

Additionally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not return to work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled'

or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations.  Although the ALJ acknowledged the appropriate standard with regard to Dr. Rodrigue, he ignored the consistent evidence in the record related to the claimant's constant pain and asserted without support that the functional limitations regarding sitting and standing must be subjective because Dr. Rodrigue did not perform full functional capacity evaluations.  This ignores Dr. Rodrigue's nine-year treatment relationship with her and knowledge regarding her limitations that he possessed as part of that treatment relationships, without needing to conduct a complete functional capacity evaluation.  *See Langley,* 373 F.3d at 1119.  *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). Instead, the ALJ ignored the evidence in the record regarding the claimant's continued pain and need for treatment, focusing on those notes where the claimant was doing well.  The ALJ thus improperly evaluated the treating physician opinion that the claimant could not work.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Moreover, because the ALJ improperly evaluated Dr. Snell's treating note, essentially rejected the opinions of Dr. Rodrigue, and further found that the state reviewing physician opinion did not adequately account for the claimant's physical limitations, the ALJ has *connected no evidence in the record* to instruct this Court as to how the claimant's limitations are accounted for in the RFC. The undersigned Magistrate Judge acknowledges that the record in this case is sparse with regard to actual functional examining evaluations of the claimant's physical impairments, as well as the ALJ's broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Nevertheless, the undersigned Magistrate Judge encourages the ALJ to consider recontacting the claimant's treating physician, Dr. Rodrigue, requesting further medical records as he stated that his treatment records supported his letters, and/or ordering a consultative examination to properly account for the claimant's impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or when additional

tests are needed to explain a diagnosis already in the record, but an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record, and the undersigned Magistrate Judge leaves that to the ALJ on remand. *See Hawkins*, 113 F.3d at 11666, 1168. The ALJ's discretion is not boundless, and under the circumstances in this case, the ALJ should at least have explained why he failed to further develop the record.

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 24th day of August, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**